and Patrick John Bacon. I understand, Defense Counsel, you're going to split it 10-10? Yes, Your Honor. Great. Okay. And I represent Mr. Bacon. He was defendant number one, and so I thought I'd make the most of it. Yes, that makes sense. I see my clock started already. Good morning. Good morning. I represent Mr. Bacon, and as well, his mother is also in the audience. She wanted me to say hello to her. Good morning. Good morning. Let me state that for you. Mr. Bacon had two viable defenses. He had an insanity defense. He had a duress defense. Both represented prima facie evidence that supported both defenses, and he should have been given the right to present those defenses. In fact, Mr. Bacon felt so strongly about it that he still took the stand. The court, before taking the stand, stated that the court said that he had no idea what he was going to say. That's not true. We already knew what he was going to try to say. He apologized on the stand. He had already apologized to Mr. Greco beforehand. The court then allowed the prosecutor to impeach him with five prior felony convictions. Mr. Bacon was not allowed to testify as to why he apologized, why the attack happened. I understand judges are to call balls and strikes. I appreciate that. But to take the bat out of the batter's hand and then allow three strikes to come right down the middle, but in this case five strikes, and then point to the box score and say that the case is over and he deserves ten years in prison, it wasn't fair. My analogy is strange, but the trial was strange and unfair. Maybe you can address on the insanity defense, I think the, I can't remember if the district court put a lot of weight on this, but certainly the government does, that your expert was not willing to say what, the full extent of what needed to be said in order for this defense to be viable. It seemed to me that was of some significance. Maybe you can address that. The government says that as well as the district court would say, repeated that the expert would not commit to saying that Mr. Bacon was unable, quote, unable to appreciate the nature and quality of the acts. And I kept pointing out, as I do in my briefs and to the district court, that rule 704 would have prevented him from making such a statement. A statement as to the ultimate conclusion is for the jury to make. The district court on that specifically ruled that because your expert didn't reach the ultimate conclusion in his report that his testimony was irrelevant. That's right. The government had filed a Daubert motion, or at least what I would call a Daubert motion, but if I'm reading it correctly, no part of the government's motion was the ground on which the court ultimately excluded your expert. Is that right? I don't think so. If I remember right, the government also was going to that point, seizing on that Dr. Karim had not stated conclusively that Mr. Bacon was unable to appreciate the nature and quality. But Dr. Karim, of course, relied on the BOP records and the medical records, which showed that for many years, since at least 19, when he was 19 years old, he had had severe mental health defects and disorders. The BOP records show that since 2005, the BOP had known of these mental defects and disorders, both before the offense and after the offense. The district court, and so Dr. Karim had concluded that he would have, quote, difficulty appreciating the nature and circumstances of his acts. But still, and this is my point, if Dr. Karim had stated in his report that the defendant would be unable to appreciate the nature and circumstances. That would have violated Rule 704 if he had tried to testify to that. Precisely. And so the government and. So the way you prove it is by proving other lesser forms of expert evidence, and then the jury can make the final determination or not, as the case may be. That's your point, yes? Yes, it is. Yes, it is. It's only fair. It's a serious case. I understand that there was a violent act committed. But still, the defendant is entitled to a fair trial and let the jury be the trier of fact. And the case law, the Ninth Circuit case law, Kaiser even says that even if the defense, even if the evidence is weak, insufficient, inconsistent, or doubtful credibility, the jury is still entitled to make that determination. Not the court, not the district court. The district court precluded both defenses before trial. And so, unfortunately, trial, again, like I've stated, was unfair. The district court, in fact, had made statements before trial that this was a straightforward case. The defendant had made a statement. And I've already pointed out in my papers the hostility towards the defense. The duress defense was also, we felt, viable. And the jury should have been allowed to make the determinations as to the weight of the evidence that went to duress. Did your client have alternatives? Doesn't that preclude the duress defense? That's what the district court felt, but we didn't believe so. The defendant, as well as our prison expert, was in support of that. The defendant would have testified that he could not go to a correctional officer and ask for a transfer or ask to be put in protective custody because he would have testified that the prison gang here would have people, would still be able to attack him if he was in protective custody or if he transferred to a prison. And to my point, even if that is weak, let the jury decide that, not the district court beforehand stand as both the judge and the jury and weigh the evidence as to the viability of the defense. There was an immediate threat. That's what Mr. Bacon would have testified to. He would have testified that he had no reasonable opportunity to escape that threat and that it was a credible threat. As to all points, Mr. Bacon was going to testify to those, and the prison expert, the prison expert who is a former BOP correctional officer and associate warden would have also testified that there is such a thing, that prison gangs have ways of reaching people that refuse to do the crimes if they're threatened and refuse to do what they're told by the prison gang. I don't know. It strikes me that our circuit precedent forecloses that type of testimony on duress simply because those types of things don't demonstrate the required level of I have no alternative. Somebody's holding a knife to my throat. Well, in this, I mean, I agree. I agree that he should have been allowed to at least present the defense. He satisfied. We presented a prima facie case as to all three elements. Also, in support of this, the victim provided evidence, both an audio recording and a written statement in support of Mr. Bacon's sentencing, which reflected the same points. He said that the prison gang had threatened him and the prison gang had threatened to assault him if he didn't commit acts and that he felt that Mr. Bacon was tricked, taken advantage of into committing these things, and he held no ill will towards Mr. Bacon. So all this evidence reflects that the defenses were viable and should have been allowed to be presented to the jury. We ask that the case be reversed and, frankly and respectfully, be designated to a different district judge. Thank you. Okay. Thank you very much. We'll hear from your counsel for your co-defendant. Good morning. Ethan Ballot today speaking for Daniel Ray. With our time together, I'm going to focus on the primary Rule 29 issue. In 2014, the Supreme Court issued Rosemond, and this court followed quickly with Gold Tooth, which made clear, as applied to this case, for aiding and abetting liability. At the time Daniel Ray placed the book on a table in that pod, the government needs to prove to sustain a conviction that Daniel Ray knew there was a knife secret in that book, and the government had to prove beyond a reasonable doubt that Daniel Ray knew that Patrick Bacon would then take that knife and stab Anthony Greco with it. On those two critical points, the government has offered nothing, and there's insufficient evidence to sustain his conviction. Well, there's not nothing. There's the video, and I think beyond that there's really nothing. Right. I'll agree there's the video, and I think that's great. And the key point I want to focus on. Well, let me focus you on the point of these. I mean, I've watched it a couple of times. It's, you know, it's subject to different interpretations, but there's the point at which I'm trying to keep the names right. Mr. Bacon is seated at the table. Yeah, Bacon's with the hat. Yeah, and he's struggling with the book, and he kind of looks over at your client as though for help, and your client kind of starts to walk toward the table. Am I remembering that right? Well, I don't know how you get looks for help. I think he's looking at the book. I don't get that. Okay, I'm not talking about how if I had been a juror, I would have interpreted the video. We obviously have to construe it in the light most favorable of the government. It seems to me a reasonable juror could look at that video and interpret it as one guy's struggling with a book that had been handed to him by your client, looks over like, hey, what the hell, and your client then starts coming over as though to provide assistance. So that to me was the problem. Well, I think the problem, I think the key fact, and here's I think where the case goes awry for the government no matter what, based on how they chose to prove it. Daniel Ray didn't choose the book. The government had presented evidence that Daniel Ray went into his cell and selected Moby Dick, and that's the book where the knife is. They've got an inference. Inference is deduction from facts. Inference is not speculation. And if we look at the ERs, we look at their argument, it's rife with speculation. It seems like a very damning concession in my mind, because if I remember, what happened was he didn't actually enter the cell. He kind of reached in and his cellmate handed him the book? That is correct. Why couldn't a jury infer that there was already some communication between the two of them as to which book would be handed to your client? Because that's the definition of speculation. So what's the conversation, Your Honor? Tell me how we're making deductions, and I would ask Your Honor to look at the commentary through circuit jury instruction 1.5. So there was no prior conversation between your client and his cellmate. He reaches in, and his cellmate just knew somehow, oh, you want a book. There may be a prior conversation, but now we're talking about speculation. You're right with me, Your Honor, and that's what's going to turn this case. Look at the commentary to 1.5. We wake up in the morning. There's water on the ground. We can infer it rained. And then the commenter says, but let's say there's a hose that's on. We can now infer maybe the water came from the hose. But we can't say if we wake up, well, maybe there's a hose. Maybe most houses have hoses. Maybe he was watering his lawn. That's where we get to speculation. Was the conversation at the door, why is even your client, he's getting the book from Bacon, why is my, maybe Mr. Ray's the heavy. Where have you been, Bacon? You're late. It's savvy time for Greco. Maybe that was the conversation. Maybe the conversation is Sylvia's waiting for you. Maybe the conversation is Sylvia said you're here. I'll take you to him. Those are all maybes. That's speculation. I'm confident the four of us could get together and write a million scripts. Go back to the point I was raising about the seeming look to your client for help when struggling with the book. Why wouldn't the jury be able to infer from that alone that your client knew that there was something secreted in there and that the person he wanted to take it out was having trouble and he was going to go over to help? I don't think a look of this says help me stab Anthony Greco. And that's what they had to prove beyond a reasonable doubt. I think it's help me get this thing out of the book that you were supposed to have supplied to me that I can't get out. Because, of course, you know what I'm about to do with this. That doesn't strike me as speculation in the way that you characterize it. Of course, that's what I'm going to do. Your Honor, respectfully, that's speculative. Today you're asking me hard questions. You ask very hard questions to the plaintiff's lawyer. Can we infer that before you came out behind here the three jurors got together and said, let's stick it to the plaintiff? We can't infer that. That's not a deduction. We only do that on special occasions. Good to see you again, Judge Rakoff. Well, you might have been able to infer that if we handed a book with a knife to someone. The handing, I think the choice of the book, and I think this is the reaching into the door. What does happen? Again, inference is deduction from known facts. The government could have introduced a ton of more facts. We know from the conversation we just had with Mr. Kajoyan that there was some gross evidence never presented to the jury about motive, how this came to be. Is Sylvia a shot caller? What's his methodology? There's a ton of evidence that was chosen not to come in. But the facts of the video, and it's only the video, the guards don't really talk about Ray. And we know from Goldtooth mere presence isn't enough. So even if he's walking to the table, he's not actively participating. That's Goldtooth. That's mere presence. He has to know the knife is in it. And so what happens? He comes in. They walk to the cell. Ray knocks. Door opens. Door closes. Guards come over. Door opens. Ray reaches into the book. Doesn't go in. He cannot be taken off a shelf. The defense lawyer, I think his name is, says he wants to establish that it's being handed to him. Because that's key. He's not selecting the book. It's being handed to him. And if it's being handed to him, he's not making the choice of the book with a weapon in it. He's giving a book that someone's telling him. He's passing the salt at the table. Maybe it has cyanide in it. I don't know. But the act of passing, it's no ---- I hear you. No, that's your perfectly fair argument. I guess I just come back, though, to the point in the video that I stressed at the outset. And I guess you're just saying that, well, Judge, you looked at that video and you interpreted it wrong. He never looked at him for help. He was not walking over to provide help. Is that what you're saying? I'm saying, with respect, the notion that on this video you can see both eyes of these people and you're able to infer that that was a look for help, I respectfully say that's not possible. A joker, can Todd Phillips establish that mood of what recognition is? Can we have recognition right now? Absolutely. But on that video, Your Honor, that's speculation of why he's looking over. And it doesn't establish he knows he's going to stab Greco. Where is the evidence that Daniel Ray wanted Greco stabbed? There's a knife in that book that Mr. Bacon is trying to get out. I think you can piece it together. It's not speculation at that point that you can piece together that, oh, yeah, he knew it was about to go down. Especially if I remember, he then, when Mr. Bacon does advance on the victim, your client sort of, unlike everyone else, just sort of sits back and watches. So by doing nothing, he's actively participating with full advance knowledge of the attack? I'm saying that if he knew, if a jury could fairly infer from the video that he knew there was a knife in that book, it's not crazy to assume, to infer, as you put it, that he then knew what was about to happen once the knife was taken out. That doesn't strike me as crazy at all. Your Honor, I think respectfully, I think you give it away when you just use the word assume. We're assuming, speculating. I'd like to reserve my two if I can, and thank you for your time. Okay, very good. Let's hear from the government. Good morning, Your Honor. If it may please the Court, Sean Andrews on behalf of the United States. I'd like to jump right into the insanity defense issue with respect to Mr. Bacon. There are three bases on which this Court can affirm the district court's decision to exclude the testimony of Dr. Kareem. Reliability, relevance, and Rule 403. I'd like to start with reliability. In order to really examine the issue of reliability, I think it's important to look at what the opinion that was proffered in the report submitted to the Court by Dr. Kareem were. The exact opinion was that someone who was, quote, suffering from the myriad of severe mental health disorders that Mr. Bacon was facing would have had difficulty understanding the nature and quality. Well, counsel, that's not actually, I don't think, the opinion. I think at page 20 of the final report, based on the above, I would conclude that Mr. Bacon was suffering from a myriad of severe mental health disorders. So the doctor said that's his conclusion. Then he goes on to say, therefore, he would have had difficulty understanding the nature and quality of his actions at the time of the offense conduct due to a period of psychological decomposition. And then he adds two sentences later, this resulted in Mr. Bacon living in an altered reality at the time. So he why couldn't a jury, if they're hearing all that and hearing the other evidence proffered by the defense, have concluded that he met the admittedly high burden for insanity? Well, I think the question in front of the court was whether, as Judge Bennett pointed out earlier, this was a Daubert-type motion. So the court is tasked with its gatekeeper. It wasn't a really Daubert. I hear you. It is quasi-Daubert, but the psychiatrist didn't testify, as I understand it, at the hearing, right? He did not. So this was just done on the papers. Correct. No one said, well, why don't we just ask the doctor what he meant by difficulty, which might have illuminated the very question that the judge went off on, but no one did. So I don't think there was an attention to the methodology of the doctor. I don't think there was attention to the error rate. I don't think there was attention to peer review. So I don't think it was a Daubert hearing in the technical sense. But some of the points that Your Honor just mentioned gets to my point, which is that error rate, peer review, et cetera, those Daubert factors were – I'm sorry, if you had challenged on those grounds, from what I can see of this report, there might have been some problems with this report. But you didn't. But the court was exercising its gatekeeping function. But I have to respectfully disagree with you. Reading what the court said at page 21 of the transcript, the R95, the fact that Dr. Karim is unwilling or cannot opine that as a result of the mental health issues he was unable, as opposed to difficulty understanding to appreciate the nature and quality of his acts, does not satisfy the threshold standard of relevance. I mean, that's the entire basis of the court's ruling, because Dr. Karim was unwilling to issue, to write what Rule 704 would have prevented him from testifying to, that the whole testimony was out, and I just don't see what the legal basis for that ruling is. I agree that there are some potential issues with this report, but that's not the basis on which the judge ruled. The judge also indicated that he believed the opinion to be speculative and unreliable. Well, where? If you can give me a moment of the court's indulgence, Your Honor. I mean, I think you're probably referring to ER 97. I believe that's correct. But I don't see that. I mean, I see that he says that, which I don't understand, the court finds that Dr. Karim's opinion violates Rule 704, which I don't understand how the opinion could violate Rule 704, but I don't see anything on that page that says what you're saying. Your Honor. I don't want to distract you by looking. No, I understand, Your Honor, but we leave, the record does show that the district court indicated that he believed that Dr. Karim's opinion was speculative and unreliable, and we believe that that was correct, because if we're talking about reliability, I think we do have to look at, again, what that opinion was. And the opinion was that Mr. Bacon would have had difficulty understanding the nature and quality of his actions. Full stop. Dr. Karim had a choice under the IDRA in terms of there's two prongs that Congress has said could potentially establish the insanity of a defendant. One, that he didn't appreciate the nature and quality of his acts, or two, that he didn't appreciate the wrongfulness of his acts. But in this instance, what Dr. Karim said was that Mr. Bacon was unable to appreciate the nature and quality of his actions. Again, full stop. So I think if we look at that from any perspective, psychiatric, legal, commonsensical, the notion that someone is unable to appreciate the nature and quality of his actions in this context is remarkable, because the actions in this context were Mr. Bacon took a prison-made knife and brutally stabbed another inmate for nearly a minute. Counsel, if I were in your position at the trial level, that's probably exactly what I would have been saying at closing argument, and talking about the preliminary things in the doctor's report about the prior experiences with Shanks. But in closing argument, I mean, do you think, is it the government's position that what the district court said was that because Dr. Karim didn't opine on the ultimate issue, his opinion is not, doesn't meet the required standard of relevance? Is the position of the United States that that was on ER 95, the sort of second full paragraph from the end of the page, that that was a correct statement of the law by the district judge? We believe that it is, and we believe that it goes hand in hand with the reliability determination that was lacking. So that the only way Dr. Karim's report could have presented admissible testimony is if Dr. Karim had explicitly opined in the report that as a result of what he described as mental disorders, I think using the term of the DSM-5, that as a result that the defendant could not understand the nature and quality of his actions, that that's the only thing that would have made that testimony admissible? No, Your Honor, because there's two prongs here that we're examining, and I think going back to reliability, it was the defendant's burden, it was Mr. Bacon's burden to establish the reliability of Dr. Karim's opinion. And again, the actions that we're talking about here are the actions of stabbing another person for nearly a minute. And in Dr. Karim's report, there's nothing to support that assertion. There is nothing within the report that documents the steps that Dr. Karim took to arrive at that conclusion. So in other words, Dr. Karim says that there's a myriad of disorders. I think if we look at the reply brief from Mr. Bacon, what Mr. Bacon is now kind of hanging his hat on in Dr. Karim's report is this diagnosis of schizotypal personality disorder because he cites to a Fifth Circuit case long which found that schizotypal personality disorder was severe. I think that's telling insofar as none of these other, quote, myriad mental health disorders are characterized as severe anywhere within the report with any specificity. Well, I come back to the point that Judge Bennett keeps emphasizing, which is I don't see, and I know you say it's there, but I don't see where the district judge made the kind of finding in ruling this out that you're now saying he could have made. Maybe he could have, but I don't see where he did. Again, we believe it's at ER 96 that he indicated that the testimony was speculative and unreliable. So we believe that the problem here is, Your Honor, even assuming, and I would note parenthetically for the court, if we look at GER 324, which is the first time within either of Dr. Karim's reports that there's a mention of schizotypal personality disorder. It's a Dr. Jasmine Jones who I believe in 2015 provided that diagnosis. If you look at GER 324, Dr. Jones indicates that she actually never met face-to-face with Mr. Bacon. So she renders this opinion without actually engaging in an in-person interview with Mr. Bacon, and I think that's problematic in and of itself. I think the APA would probably describe that as armchair psychology, rendering an opinion solely based on what other people have said. I'd also note parenthetically that the DSM-5 requires five symptoms to diagnose an individual with schizotypal personality disorder. I think if we looked at what Dr. Jones said, she only identified four. So to the extent that Dr. Karim has based his opinion that the severe mental health disorder was schizotypal personality disorder, you can see how the district court would be concerned about how he got there. Because, again, there's no documented reasoning process saying, if schizotypal personality disorder is the severe mental health disorder that caused him to have difficulty. Counsel, you are correct on ER 96 that the court does say that Dr. Karim's opinions are speculative, irrelevant, and unreliable. But the way I read that, that is for the most part, if not entirely, based on his finding that Dr. Karim didn't opine on the ultimate issue. And maybe what you just said in the last minute of your argument would have been an acceptable basis for the court to exclude the report, but the court said none of that. I think it was certainly in the lengthy kind of dissertation that the district court held forth on regarding Dr. Karim's report. That's a logical conclusion to make, that it's unreliable, because he points to some of these specific things that I'm talking about. Essentially, what's going on here, it's speculative and unreliable, because it relies solely on the word of Dr. Karim. And when something relies solely on the ipsy-dixit of the expert, that is saying that it's unreliable. And when the court takes a look at these two reports, it's glaring that there's no documented reasoning process. I think we would be in a much different place if Dr. Karim said, schizotypal personality disorder is a severe mental health disorder. DSM-5 requires there to be five symptoms present in order for there to be a diagnosis of schizotypal personality disorder. Based on my review of the records, based on my in-person interview with Mr. Bacon, based on my review of the discovery in the case, here are the five symptoms that I believe are present. Now, based on those five symptoms, here are X number of learned treatises, here are X number of studies that show how those symptoms could lead to a person having difficulty understanding the nature and qualities of his acts. Again, that extraordinary assertion that a person doesn't understand he's stabbing someone else when he's stabbing him. Furthermore, it would have been helpful had Dr. Karim been able to say, not only are there these learned treatises, not only are these studies, I have my own clinical experience showing that those five symptoms, in my experience, I've seen that where individuals with those symptoms have had difficulty appreciating the nature and quality of his actions. That's not said. So, again, at the risk of beating a dead horse, where in the judge's decision are the points you're now making, which have a lot of facial validity, but where does he say all that? It's at ER 95 and 96, I believe, again, Your Honor, where there's this discussion that this is speculative because it relies solely on the word of Dr. Karim. And it does. When we're looking at this, particularly from the perspective of the judge's gatekeeping function, it's totally speculative. There's nothing presented other than to say, based on the above, given the above, and that's insufficient under this court's case law. Counsel, I mean, I just don't see that in the court's ruling. But if the court had ruled the way your argument was, then theoretically the defendant would have had a chance to come in with an amended report. Theoretically. I don't know what the timing was. But with the court saying, unless the doctor is willing to connect the dots and specifically opine that the defendant lacked the ability to appreciate the nature and quality of his acts, the testimony is irrelevant, I mean, there's just, if the doctor can't say that, then the defendant has nothing they can change the report to. I would stand on our arguments about the unreliability prong of this. And I would also point out that I think the argument about 704 in the context of this pretrial examination of Dr. Karim's report is misguided. 704 is a rule that's operative with testimony at trial. And this was really, the operative rule in this particular area was 104A. 104A allows the court to make preliminary determinations about the qualifications of an expert or the admissibility of testimony without regard to other rules of evidence. And that's what the judge was doing here under his gatekeeping function. So in this instance, the testimony was unreliable, and whether we would have objected at trial to what Dr. Karim said was a matter for trial. This is really a question that I want to put now for your adversary, but you may be able to answer it as well. After the judge had ruled as he did, did the defense at any point say, Judge, we'd like to call the doctor for a pretrial hearing because we think you're misinterpreting his report or something like that? No, they didn't. And they absolutely could have asked for that because it was their burden to establish relevance, reliability. And I have a minute and a half left, Your Honor. I'll give you some extra time because we want to hear from you on that. So I point out something else with respect to the reliability prong in terms of whether this is speculative. What courts have looked to is whether experts have ignored obvious alternative explanations for the behavior that's being opined on. And what we have here with Mr. Bacon is an individual who had twice been convicted of violent assaults, who, after the assault took place, sat down in an interview with an FBI special agent and gave the FBI special agent the reason why he assaulted Greco. He said, I thought he killed a two-year-old kid. I thought he was potentially a scumbag, and that's why I did it. So the district court knew that because that was submitted to the district court prior to this ruling taking place. So the district court was, again, justified to look at that and say that Dr. Kareem's opinion was unreliable. Just with my last remaining time, Your Honor, I do want to address Mr. Ray's argument. Your Honor, Judge Watford, you pointed out that there is this moment in the video where Mr. Bacon looks over, and we do believe that that was direct evidence from which we were able to argue and convince jurors that there was sufficient evidence for the conviction. But there was more evidence than that. What else? Because that seemed to me the best that you had. And, you know, I hear counsel's argument that I'll go back and watch it again. That's a pretty thin reed on which to rest a conviction. But so what else do you think you have besides that? So what the jury saw on that video was that before Mr. Bacon entered Housing Unit 2B, Mr. Ray was loitering kind of aimlessly on one side of Housing Unit 2B. When Mr. Bacon appears at the sally port, he rings a doorbell. When that doorbell is heard, you can see immediately that Mr. Ray shifts and with purpose walks towards the sally port as if he's expecting somebody to arrive. When Mr. Ray arrives at the door to the sally port, he sits there and waits. A couple of inmates walk past Mr. Ray. He ignores them. But then Mr. Bacon walks in and Mr. Ray immediately rendezvous with Mr. Bacon as if he was expecting him to arrive. And then I think respectfully what counsel ignores is that there was testimony from the officers about what Mr. Bacon was saying in the presence of Mr. Ray. And Mr. Bacon is saying, I've been assigned to Housing Unit 2B, and that was a lie. And there's actually a moment, and we argued this in our closing, where Mr. Ray appears to point towards cell 122, which is the cell that Mr. Bacon said that he was assigned to. So we argued that in closing. And respectfully, I think that the argument that's presented by defense counsel at this stage is an argument that was for the jury pre-conviction under Jackson. There was ample evidence from which a single juror could infer the guilt of Mr. Ray. With that, Your Honors, I'd submit. Okay. Thank you very much. We'll give defense counsel two minutes each for rebuttal. Thank you. Your Honor, the government's discussion here about the DSM-5 factors was not done at the district court level. It's not in their answering brief. It's too late. And frankly, that would have been possibly appropriate as to an argument to the jury, but of course we didn't get there. The judge excluded our defenses because the government moved pre-trial, eliminate to exclude it. The judge excluded it for the reasons we've discussed here. It's clear. There was no evaluation or discussion. So the judge is saying that he reads the conclusion as being insufficient. He may also be saying to some extent that it's speculative. Why didn't you at that point say, Judge, we propose to call the doctor to have him testify as to clear up any misunderstandings Your Honor may have. You didn't do that, right? We didn't do that. We had a preliminary report. If I recall, there was an argument or discussion as to that not being sufficient, so we provided the supplemental report. The judge, of course, found that insufficient for the reasons we've discussed because the conclusion wasn't good enough for the judge. So no, we didn't call him because I didn't think it was going to make a difference. The judge had already excluded him. His decision was final. He repeated that ER-41. He didn't allow us to present any insanity defense, which, of course, the insanity defense does not require an expert to testify. You could still present an insanity defense at trial, albeit it would be a weak one if you don't have an expert to support your defense. But the judge said ER-91, you need an expert to get that before the jury. So he had excluded the expert for the reasons we've discussed. Importantly, Rule 702, our expert, Dr. Kareem, satisfied Rule 702. He was a licensed forensic and clinical psychologist from the University of Cambridge. He did as his peers did, which is review the mental health history. He personally met with Mr. Bacon, and so this notion that it's only based on Dr. Kareem's word is not true. Dr. Kareem relied on BOP clinicians, which had found that he had severe mental health disorders, both before and after. And the court, unfortunately, said that, to paraphrase, he didn't care what clinicians, what the reports had said since 2005. I had pointed out to the district court that since 2005, at least, the BOP had documented his severe mental health defects. And whether they're severe or not, or whether they ultimately translate into him being unable to appreciate the nature of his acts, that's for the jury to decide, not for the district court to decide and precluded us from presenting.  Thank you, counsel. Let's, again, give two minutes for counsel for Defendant Ray. I'll make three points if I may. I'd urge the court to look closely at Goldtooth. In Goldtooth, three visibly armed men surrounded two others. They intimidated them. They patted them down. They asked for money. They took nothing. They pushed them in the head and took a hat off and hit them with it. One of the men that was surrounded offered to give them free cigarettes. At the point he was handing over the cigarettes, one man grabbed his tobacco. All three left together. Judge Noonan, in a very thoughtful opinion, established why that's insufficient evidence to infer that the other two planned the robbery. They were there. They were armed. They were intimidating. They were clearly participating in some fairly nefarious improper conduct. But there was not sufficient evidence to conclude they were in on the theft, on the robbery, and that's what they had to prove here. In this case, I think the government kind of gave it away, too. Their big point is Mr. Ray, quote, in the presence of Mr. Ray, close quote, Mr. Bacon lied. Well, Goldtooth also establishes mere presence isn't enough, and the fact that Ray knew that Bacon wasn't supposed to be there doesn't prove either of the two critical facts. He has to know the shanks in the book that Sylvia selected, and he has to know he's going to stab Anthony Greco, which we've heard nothing of. That's what they have to prove beyond a reasonable doubt. Those inferences are too small. The last point I'll make as my time runs down is they make the argument that he pointed to cell 122. Neither one of the witnesses, neither Melix nor Hammond, the guard, said anything of the sort. They didn't establish where 122 was. That was also speculation, and as we established, I think it's footnote one of our reply, it doesn't make sense. If Bacon's trying to fool the guards that he lives in a cell, he wouldn't have Ray helping him show where the cell is. He would know where his cell is. All those pods are the same. Bacon knew where 122 was. That's a nonsensical argument and a distraction. There's not sufficient evidence that Daniel Ray knew that Sylvia put a shank in that book or that Patrick Bacon was going to stab Anthony Greco. Without that proof, it's this Court's obligation to vacate reverse. I thank you, Your Honor, for your time. Okay. Thank you very much. The case just argued is submitted.
judges: Watford, Rakoff, Bennett